IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01248-CMA-CBS

GATES CORPORATION, a Delaware corporation; and
GATES CANADA, INC., an Ontario corporation,
    Plaintiffs,
v.

TWIN CITY DIE CASTINGS COMPANY, a Minnesota corporation,
    Defendant.

## RECOMMENDATION ON DEFENDANT'S MOTION TO TRANSFER VENUE

Magistrate Judge Shaffer

THIS MATTER comes before the court on Defendant Twin City Die Castings Company's ("Twin City") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (doc. #6), filed on May 21, 2012. Defendant wishes to transfer this action to the United States District Court for the District of Minnesota. Plaintiffs Gates Corporation and Gates Canada, Inc. (collectively "Gates") filed their Response to Motion to Transfer Venue (doc. # 10) on June 11, 2012, and Twin City filed a Reply in Support of Motion to Transfer Venue (doc. # 15) on June 22, 2012. Pursuant to a Memorandum (doc. # 9) dated May 23, 2012, the instant motion was referred to this Magistrate Judge. The court has reviewed the pending motion, the related briefs and exhibits filed by the parties, and the applicable law, and is sufficiently advised in the premises. For the following reasons, the court recommends that Defendant's motion be granted.

## BACKGROUND FACTS

Gates Corporation, a Delaware corporation with its principle place of business in Denver, Colorado, and Gates Canada, Inc., a Canadian corporation with its principle place of business in Ontario, commenced this action on April 3, 2012 by filing their Complaint in the District Court for the

1

City and County of Denver, Colorado. The action was removed to this court on May 14, 2012. The named defendant, Twin City, is a Minnesota corporation with its principle place of business in Minneapolis, Minnesota. The court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Complaint asserts claims for breach of contract, breach of the implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranty, unjust enrichment, and negligent misrepresentation allegedly arising from a contract to supply spyder sprockets for ultimate delivery to Bombardier Recreational Products, Inc. ("BRP") for installation in on-road and off-road recreational vehicles. Plaintiffs allege that Defendant manufactured at least 400 sprockets that did not conform to required standards and were defective, and that Twin City refused to pay expedited freight and shipping costs, as required, after failing to meet production deadlines. *See* Complaint (doc. #1-1), at ¶¶ 17-21.

More specifically, Plaintiffs contend that in or about March 2010, Gates initiated discussions with Twin City to become a preferred supplier of sprockets for BRP off-road recreational vehicles. *Id.*, at ¶ 6. Although the factual allegations in the Complaint do not reference specific dates, a rough chronology of events can be gleaned from the exhibits attached to Defendant's Motion to Transfer Venue and Plaintiffs' Response brief.

On March 20, 2010 and June 10, 2010, Twin City sent Gates Corporation die casting quotations specifying prices and quantities. *See* Declaration of Greg Hanson and Exhibits C (doc. #6-4) and D (doc.#6-5) attached to Defendant's Motion to Transfer Venue. Neither quotation specifically contained a forum selection clause or choice of law provision. On or about June 17, 2010, representatives of Gates Corporation and Twin City executed a Confidential Information Disclosure Agreement, which specifically designated Amy Risley, Dan Gillespie and Tony Stefanelli as Gates' "principle contacts for disclosing and receiving confidential information" in connection with the

contemplated transactions.[1]  *See* Exhibit B (doc. #10-2), attached to Plaintiffs' Response.  On or about August 18, 2010, Gates Corporation sent a two-page Purchase Order to Twin City.  The Purchase Order directed Twin City to ship the products and corresponding invoice to "Gates Corporation . . . Rochester Hills, Michigan."  At the bottom of each page of that Purchase Order was the pre-printed legend:

> CONDITIONS OF THIS ORDER
>
> THIS PURCHASE ORDER IS SUBJECT TO THE GATES GLOBAL PURCHASING TERMS AND CONDITIONS EXCLUSIVELY.  ANY CONFLICTING TERMS FOUND ON YOUR PROPOSALS, SALES DOCUMENTS OR INVOICE ARE VOID. GATES TERMS AND CONDITIONS CAN BE VIEWED ON THE GATES SUPPLIER NETWORK 9GSN) HOME PAGE AT https://gsn.gates.com/gsn.

*See* Declaration of Amy Risley and Exhibit 2 (doc. #10-3, page 9 of 62), attached to Plaintiffs' Response.

On September 13, 2010, Ms. Risley sent Defendant various documents, including a Terms and Conditions Acknowledgment Letter that Twin City was asked to sign and return by September 15, 2010.[2]  *See* Declaration of Amy Risley and Exhibit 3 (doc. #10-3, page 11 of 62), attached to Plaintiffs' Response.  On September 14, 2010, Ms. Risley sent Twin City a Presourcing Agreement that also required a signature.  *See* Declaration of Amy Risley and Exhibit 4 (doc. #10-3, page 16 of 62), attached to Plaintiffs' Response. There is no indication in the record Twin City ever executed and returned these documents.

---

[1]Twin City states that Dan Gillespie worked out of Gates' office in Rochester, Michigan and was Defendant's principal contact at Gates with respect to technical matters.  Defendant states that Tony Stefanelli was based at Gates' Elkhorn, Wisconsin office and was "the primary person at Gates who dealt with BRP regarding the sprockets themselves."  *See* Declaration of Greg Hanson (doc. #6-1), at ¶¶ 28 and 30.  Neither of these representations are contradicted in Plaintiffs' Response.  It appears to be undisputed that Ms. Risely was a Senior Sourcing Specialist employed in Denver, Colorado by Tomkins Industrial & Automotive, the parent company of Gates Corporation.  *See* Declaration of Amy Risley (doc. #10-3), attached to Plaintiffs' Response.

[2]Ms. Riley transmitted copies of her e-mail to Dan Gillespie and Tony Stefanelli.

Twin City apparently shipped parts to a third party in Canada in September, October and November 2010.  Gates employees began voicing concerns about those deliveries in November 2010.  Apparently, "[o]n December 6, 2010, Gates informed [Twin City] that the sprockets were defective and that the process Gates and BRP required to install the bearings was different than what Twin City was using."  *See* Declaration of Greg Hansen, at ¶ 17, attached to Defendant's Motion to Transfer Venue.  Thereafter, a series of internal Gates e-mails addressing the Twin City parts were authored by or sent to Dan Gillespie, George Gentry or Pauline Naccarato.[3]  On February 7, 2011, Gates received, apparently for the first time, Twin City's Terms and Conditions of Sale.  *See* Declaration of Greg Hansen and Exhibit A (doc. #6-2), attached to Defendant's Motion to Transfer Venue.

Defendants filed the instant Motion to Transfer Venue on May 21, 2012,  arguing that the District of Minnesota is the proper venue in this case because "(1) the underlying factual circumstances of the dispute barely touch Colorado and instead surround and involve Minnesota products, witnesses, documents and issues; and (2) the parties agreed to a forum selection clause designating Minnesota as the proper venue."  Gates' Response contends that a change of venue should be denied based upon the presumption favoring a plaintiff's choice of venue.  Plaintiffs also argue that the "underlying disputes arise in part out of events that took place in Colorado," that the "parties negotiated key terms of the contract in Colorado and that Twin City made misrepresentations to a Colorado resident," that under Gates' terms and conditions, Colorado governs the parties' dispute, and that Twin City has not met its burden of showing that Colorado is an inconvenient forum.

## ANALYSIS

The legal standard that must guide this court's recommendation is not in dispute.  Under 28

---

[3]During the relevant period, Mr. Gentry was a Gates Supplier Quality Engineer based in Columbia, Missouri, while Ms. Nacarato was the Director of Purchasing for Tomkins Industrial & Automotive based in Windsor, Ontario.  *See* Declaration of Greg Hansen and Exhibit E (doc. #6-6), attached to Defendant's Motion to Transfer Venue.

4

U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."[4] Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964), (quoting *Continental Grain Co. v. Barge, F.B.L.-585,* 364 U.S. 19, 26-27 (1960)), *superseded by statute on other grounds in Ross v. Co. Outward Bound Sch. Inc.*, 822 F.2d 1524 (10th Cir. 1987). The district court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness. *Wada v. United States Secret Service*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin and Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

Ultimately, the moving party has the burden of showing that the action could have been brought in the alternative forum, the existing forum is inconvenient, and the interests of justice are better served in the alternate forum. *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005). *See also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999); *Chubb v. Union Pacific Railroad Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995). "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992), quoting *William A. Smith Contracting Co., Inc. v. Traveler's Indemnity Co.*, 467 F.2d 662, 664 (10th Cir. 1972). *See also Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 n. 13 (10th Cir. 2010) ("For more than five decades, we have required the movant to demonstrate that the balance of factors 'strongly favors' a transfer of venue under §

---

[4]The parties do not dispute that this action could have been brought originally in the District of Minnesota. *See* 28 U.S.C. § 1391(a) (in an action where subject matter jurisdiction is based upon diversity, a civil action may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to persona jurisdiction at the time the action is commenced).

1404(a).").

In applying § 1404(a), the district court should weigh several factors, including the plaintiff's choice of forum,

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflicts of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make trial easy, expeditious and economical.

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). *See also Four Corners Nephrology Associates*, *P.C. v. Mercy Medical Center*, 464 F. Supp. 2d 1095, 1098 (D. Colo. 2006) (factors relevant to a transfer under § 1404(a) include the plaintiff's choice of forum, the convenience of witnesses, the accessibility of witnesses and other sources of proof, the possibility of obtaining a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious and economical).

Many of the factors cited in *Chrysler Credit Corp.* have little, if any, significance under the particular facts of this case. For example, neither side has raised issues concerning the enforceability of any judgment that might be entered or the congestion of court dockets.[5] While each side invokes the choice-of-law provision in their form contract, this is a relatively simple breach of contract/breach

---

[5] I note in passing that Federal Court Management Statistics show that for the twelve month period ending September 2011, the median time from filing to disposition for civil cases in the District of Minnesota was 8.5 months and 5.7 months in the District of Colorado. During that same twelve month period, the median time from civil filing to trial in the District of Minnesota was 25 months, compared to 26.7 months in the District of Colorado. Each active district judge in the District of Minnesota had an average of 624 cases, and the average weighted filings per judge in the District of Minnesota was 604. In Colorado, there were 578 cases per judge and the average weighted filings was 670. *Cf. PLX Technology, Inc. v. Knuettel*, 2012 WL 1813291, at *3 (D. Colo. May 17, 2012) ("When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge and average weighted filings per judge.").

of warranty case. Neither side is suggesting that the case will turn on the interpretation or application of any law unique to either Colorado or Minnesota. Similarly, the parties have not argued that either the District of Colorado or the District of Minnesota will provide "advantages [or] obstacles to a fair trial."

There is disagreement, however, as to the applicability of competing forum-selection clauses in the parties' contracting documents. Twin City invokes the forum-selection provision in its form Terms and Conditions of Sale, which states that the "parties consent to the exclusive, personal and subject matter jurisdiction of the federal and state courts of the State of Minnesota sitting in Ramsey County in any dispute arising under the terms." *See* Declaration of Grey Hansen and Exhibit A (doc. #6-2) attached to Defendant's Motion to Transfer Venue. It appears to be undisputed that Twin City did not affirmatively provide Gates with a copy of these Terms and Conditions of Sale until February 2011, approximately two months after BRP allegedly discovered defects in the Twin City sprockets.

Plaintiffs' own exhibits documenting the contract formation process with Twin City also are open to interpretation. On September 13, 2010, Ms. Risley forwarded to Defendant Gates Plaintiffs' Purchase Order Terms and Conditions. In the same e-mail, Ms. Risley asked that Twin City "sign the Terms and Conditions Acknowledgment Letter" and return it by September 15, 2010. *See* Declaration of Amy Risley and Exhibit 3 (doc. #10-3, page 11 of 62), attached to Plaintiffs' Response. Plaintiffs' Purchase Order Terms and Conditions specifically state that "[t]he terms and conditions . . . constitute the entire agreement . . . between the parties," and further provides that "this Agreement may only be modified or cancelled in a written document signed by authorized representatives of both parties."[6] The Purchase Order Terms and Condition form includes a choice of law provision, but does not mandate a particular forum for resolving any claims or causes of action "based upon or arising out of

---

[6]The court has not been provided with any document subsequently executed by both parties that purports to "modify" Gates' Purchase Order Terms and Conditions to add a forum-selection provision.

7


this Agreement or its subject matter." *Id.* at pages 13 and 15 of 62.  On September 14, 2010, Ms. Risley sent to Twin City by e-mail a Presourcing Agreement form, along with a request that Twin City "fill in the couple of blanks . . . and sign the form attached." *See* Declaration of Amy Risley and Exhibit 5 (doc. #10-3, page 47-48 of 62), attached to Plaintiffs' Response. The Presourcing Agreement, which does not expressly purport to modify the Purchase Order Terms and Conditions (which had been sent to Twin City the day before), states that "[a]ll parties submit, hereby, to the jurisdiction of" the courts in Colorado.  On September 15, 2010, a Twin City representative advised Ms. Risley that "next week I will work on getting those forms back to you."  *See* Declaration of Amy Risley and Exhibit 6 (doc. #10-3, page 51 of 62), attached to Plaintiffs' Response.  The court is under the impression, however, that Twin City never signed the Presourcing Agreement.

On October 29, 2010, Ms. Risley corresponded with Tami Burns, a Gates employee in Windsor, Ontario.  In her e-mail to Ms. Burns, Ms. Risley notes that

> You assisted me in sending out the Terms and Conditions to [Twin City Die Castings] and I may have made some mistakes in the process as I was learning for the first time. . . . I know you have been through this information many more times than I have with the Gates process and I would appreciate your help in my learning.

In her response to Ms. Risley's e-mail, Ms. Burns stated:

> From the documentation I can find it seems that we don't have a record of what was sent to Twin City Die Cast when we started using them.  I believe this was way before your time as I don't think this is the first project we sourced them.
>
> The Pre-sourcing agreement is not the terms and conditions.
>
> My recommendation is to first go to Gates Branford, as their PO specifically refers to terms and conditions.  Find out if they sent anything to them.

*See* Declaration of Amy Risley and Exhibit 7 (doc. #10-3, pages 55-56 of 62), attached to Plaintiffs' Response.

For purposes of the instant motion, the court will not decide which, if any, forum selection provision governs the transactions that form the basis for Plaintiffs' claims against Twin City.

8

"[P]ersuasive public policy reasons exist for enforcing a forum selection clause in a contract freely entered into by the parties, as the clauses provide a degree of certainty to business contracts. *Adams Reload Company, Inc. v. International Profit Associates, Inc.*, 143 P.3d 1056, 1059 (Colo. App. 2006), quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S.1 (1972).  "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." *Id.*, quoting *ABC Mobile Systems, Inc. v. Harvey*, 701 P.2d 137 139 (Colo. App. 1985) (holding that the burden of proving that a forum selection clause is unfair or unreasonable is on the party seeking to avoid its effect).  However, the Supreme Court has noted that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . ." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  In the absence of a clearly binding forum selection clause, however, the court is left to rely upon the multi-factor analysis set forth in *Chrysler Credit Corp*.

Gates' choice of forum should be given weight in deciding a motion to transfer under § 1404(a), particularly where granting the request for transfer would simply shift the inconvenience from one party to the other. *Cf. Mohr v. Margolis, Ainsworth & Kinlow Consulting,* Inc., 434 F. Supp. 2d 1051, 1064 (D. Kan. 2006) (holding that it is best not to disturb plaintiff's choice of forum if a transfer of venue will only shift the burden on the parties). *See also Wells Fargo Financial Leasing, Inc. v. Orlando Magic*, 431 F. Supp. 2d 955, 966-97 (S.D. Iowa 2006) (noting that '[c]ourts will normally hesitate to disturb a plaintiff's choice [of forum] unless the moving party 'demonstrates that the balance of convenience and justice weighs heavily in favor of transfer'"); *Graff v. Quest Communications Corp.*, 33 F. Supp. 2d 1117, (D. Minn. 1999)( "[S]ection 1404(a) provides for transfer to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer.") (emphasis added).

However, the weight accorded Plaintiffs' choice of forum "is only proportionate to the connection between the cause of action alleged and the chosen forum." *Blue Mako, Inc. v. Minidis*, 472 F. Supp.2d 690, 703 (M.D.N.C. 2007). *Cf. Goodman v. Schmalz*, 80 F.R.D. 296, 302 (E.D.N.Y. 1978) ("[w]here the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight"). Here, the factual connections to Colorado are minimal. If I credit Plaintiffs' own exhibits, it appears that Ms. Risley, working from an office in Denver, Colorado, was involved to some degree in preparing the contract documents ultimately sent to Twin City.[7] Yet, Ms. Risley's October 29, 2010 e-mail alludes to help she received from Ms. Burns in Windsor, Ontario, "in sending out the Terms and Conditions to TCDC." I also note that Ms. Risley also sent inquiries to Tony Stefanelli and Pauline Naccarato, and copied Dan Gillespie on those e-mails, once the "Terms and Conditions questions" surfaced in late October 2010. Although Plaintiff insists that Ms. Risley "was integral to the negotiation of these contract terms," the available record would seem to suggest that Ms. Risley was simply part of a collaborative effort that drew upon the knowledge and/or involvement of Gates employees in Elkhorn, Wisconsin, Rochester Hills, Michigan, and Windsor, Ontario.

Plaintiff also argues that Defendant's motion should be denied because Ms. Risley's "testimony is important to Gates' ability to present evidence on the terms of the parties' agreement." *But see Vu, Inc. v. Pacific Ocean Marketplace, Inc.*, 36 P.3d 165, 167 (Colo. App. 2001) ("The primary goal of contract interpretation is to determine and give effect to the intent of the parties. . . . Extrinsic evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract. Absent such

---

[7] I also note that the price quotations sent by Twin City on July 27, 2010 were directed to the attention of "Amy Risley, 3015 LeMone Industrial Blvd., Columbia, MO, USA 65201." *See* Declaration of Amy Risley and Exhibit 1 (doc. #10-3, pages 4 and 7 of 62), attached to Plaintiffs' Response.

ambiguity, a court must not look beyond the four corners of the agreement to determine the meaning intended by the parties."). In weighing the potential significance of Ms. Risley's connection to this case, I must consider the seminal issues underlying the parties' dispute. At the heart of Plaintiffs' claims and damages is the allegation that Twin City manufactured sprockets "with improper and inadequate bearings." It seems unlikely that Ms. Risley, as a former Senior Sourcing Specialist, would provide significant testimony in support of Plaintiffs' rather technical claims for breach of the implied warranty of merchantability, breach of the warranty of fitness for a particular purpose, or breach of express warranty. These causes of action would seem to have little factual relation to the current forum or Ms. Risley's limited role as a compiler of contract documents. To the contrary, it seems reasonable to believe that Gates will rely more heavily on non-Colorado based employees who were in regular contact with Twin City during the product-based inspections and negotiations that culminated in the business transactions at issue. To the extent these Gates employees may be called as witnesses at trial, they will be required to travel regardless of whether the case remains in the District of Colorado or is transferred to the District of Minnesota. Viewed from that perspective, a change of venue would not materially alter the inconvenience imposed upon these Gates employees.[8]

Similarly, there is no reason to believe that Ms. Risley was present at the Twin City facility on October 28, 2010, when, as Defendant alleges, Gates representatives "inspect[ed] and approve[d] Twin City's installation and manufacturing process and the sprockets themselves," or that Ms. Risley accompanied George Gentry, a Gates employee located in Columbia, Missouri, when he "spent

---

[8]The court acknowledges that transfer of this action to the District of Minnesota will necessitate additional travel for Plaintiffs' counsel, with some resulting inconvenience and additional costs to their clients. "However, '[t]he word 'counsel' does not appear anywhere in § 1404(a) and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007), quoting *In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004).

11

significant time in Twin City's Minnesota plan during [the] sampling and pre-production period, and approved Twin City's processes and procedures." *See* Defendant's Motion to Transfer Venue, at 5, and the Declaration of Greg Hansen (doc. #6-1), at ¶¶ 15 and 16. There is little reason to believe Ms. Risley has any direct knowledge of the alleged design or manufacturing defects in the products shipped to Canada.

The court cannot ignore the totality of circumstances in considering the convenience factor.[9] *See Amazon.com v. Cendent Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005) (in considering the convenience factor, "the Court may look at the sheer weight of the numbers" and "should consider not only how many witnesses each side may have but also the relative importance of their testimony"). *Cf. Kreinberg v. Dow Chemical Co.*, 496 F. Supp. 2d 329 (S.D.N.Y. 2007) (transferring venue after finding that most of the operative events at issue took place in the transferee venue and concluding that "it is likely that most of the witnesses and documents are located there"); *United States ex rel. Ondis v. City of Woonsocket, Rhode Island*, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (in *sua sponte* transferring the case to the District of Rhode Island, the court noted that virtually all of the operative events occurred in Rhode Island, all of the named defendants resided and worked in Rhode Island, and other named witnesses have direct connections to the transferee venue); *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp. 2d 392, 395-397 (S.D.N.Y. 2006) (transfer motion granted where numerous party and non-party witnesses resided in the transferee forum, most relevant documents were located in the transferee forum, and the transferee forum is where the subject misrepresentations alleged were issued or originated). In this case, the ties to the District of Minnesota outweigh any

---

[9]Although Twin City argues that transfer also is appropriate because "documents concerning the negotiations between the parties . . . are located in Twin City's headquarters in Minnesota," I place little weight on that factor. *Cf. Boateng v. General Dynamics Corporation*, 460 F. Supp.2d at 276. *Cf. Walker v. Jon Renau Collection, Inc.*, 423 F. Supp.2d 115, 118 n. 3 (S.D.N.Y. 2005) ("the location of documents 'is neutral [i]n today's era of photocopying, fax machines and Federal Express'").

direction connection this litigation has to Colorado.

Accordingly, I RECOMMEND that Defendant Twin City Die Casting Company's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) be GRANTED and that this action be transferred to the District of Minnesota for further proceedings.

DATED this 11th day of September, 2012.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge